

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
         **JUDGE**

## LETTER OPINION

May 26, 2011

George C. Cotz
Cotz & Cotz, Esqs.
180 Franklin Turnpike
Mahwah, NJ 07430
*(Attorneys for Plaintiff)*

Howard B. Mankoff
Victoria C. Cabalar
Marshall, Dennahey, Warner, Coleman & Goggen, PC
425 Eagle Rock Ave. Suite 302
Roseland, NJ 07068

Gail Oxfeld Kanef
Oxfeld Cohen, LLC
50 Commerce Street
Newark, NJ 07102
*(Attorneys for Defendants)*

  RE: *Emily Diaz v. Miriam Lezanski,* et al.
     Civil Action No. 9-223 (WJM)

Dear Counsel:

  This matter comes before the Court on Defendants' Motion for Summary Judgment seeking to dismiss the complaint in its entirety. Plaintiff Emily Diaz is a resident of New York who taught in the state of New Jersey during the time relevant to this action. Diaz pleads fifteen separate causes of action, all surrounding her employment as a Spanish Teacher at Mahwah High School (the "High School"), and some of which implicate her health problems, including an ongoing battle with breast cancer.
  The majority of the Defendants fall into two groups. The first group is composed of the Mahwah Board of Education (the "Board"); Charles Montesano, the

Superintendent of the Mahwah School System; John Pascale, Principal of the High School; Miriam Lezanski, head of the Department of World Languages; and Andrew Petho, Assistant Principal of the High School (collectively, the "Mahwah Defendants"). The second group is composed of the Mahwah Education Association, a teacher's union (the "Union"), and Kathy Schal, President of the Union (collectively, the "Union Defendants"). Diaz also pleads claims against another employee at the High School named Sharon Von Euler, who is otherwise unidentified. The crux of Diaz's suit against the Mahwah Defendants is that they retaliated against her, failed to grant her reasonable requests for accommodation in light of her medical conditions, and that certain of them also illegally discriminated against her on the basis of her Hispanic ethnicity. The crux of her suit against the Union Defendants is that they failed to represent her in challenging the Mahwah Defendants' actions.

For the reasons discussed below, the Motion for Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**. The Court will grant summary judgment for Defendants on all Counts except for Count 6, failure to accommodate against Montesano and the Board, and Count 8, ethnic discrimination against Lezanski, both of which sound in New Jersey law. The Court will exercise supplemental jurisdiction over these remaining state law claims.

## I.   BACKGROUND[1]

There is a long, contentious factual history in this case, but the Court will focus only on those facts material to its disposition of the present motion. Diaz was hired as a Spanish teacher at Mahwah Middle School (the "Middle School") in 2002. Union SoF ¶ 1; Diaz Aff. ¶ 2. In September of 2003, Diaz was transferred to Mahwah High School (the "High School"). Diaz Aff. ¶ 4. While the Mahwah Defendants have advanced evidence of problems with Diaz's professional performance from the start of her employment at the High School, most of the conflicts material to this lawsuit started in or around June of 2006, when two significant events occurred. First, Lezanski became the head of the Department of World Languages and Diaz's direct supervisor. Diaz Aff. ¶ 23; TAC ¶ 17. And second, Diaz had a mastectomy as part of her treatment for breast cancer. TAC ¶ 15.

### A.   Diaz's Request to be Assigned to a Single Classroom

Diaz was able to return to work in September for the 2006-2007 School Year, but she was in a weakened condition as a result of her surgery. TAC ¶ 15. Around that time, Diaz requested that she be assigned to a single classroom so that she could avoid having to move herself and her materials multiple times a day. MD SoF ¶ 23; TAC ¶ 16. Diaz

---

[1] Except where otherwise qualified or indicated, these facts are undisputed. The facts are drawn from the Third Amended Complaint ("TAC"), the Mahwah Defendants' Statement of Undisputed Facts ("MD SoF"), the Mahwah Education Association Defendants' Statement of Uncontested Facts ("Union SoF"), Diaz's Counterstatement of Material Facts ("Diaz SoF"), the February 6, 2011 Affidavit of Emily Diaz ("Diaz Aff."), the December 15, 2010 Certification of Counsel Victoria A. Cabalar ("First Cabalar Cert."), the March 2, 2011 Certification of Counsel Victoria A. Cabalar ("Second Cabalar Cert."), and other documents indicated.

2

and the Mahwah Defendants dispute whether the request was actually granted: while Diaz admits that she was thereafter assigned to teach in only one classroom, she argues that she had to share the classroom which required her to move herself and her materials at times. Diaz Aff. ¶ 26; MD SoF ¶¶ 23-24 & Exs, DD, EE, R. Diaz also claims to have requested and never received a key that would allow her access to a certain elevator or elevators at the High School. TAC ¶ 17; MD SoF ¶ 24.

### B. Withholding of Diaz's Increment

From December 2006 through April 2007, Diaz claims that she and Lezanski clashed numerous times, including disputes over recommendations for language students, disputes over grading procedures, a dispute over providing guidance to a student who was struggling in one of Diaz's classes, a dispute over a letter of complaint written by a student, and disputes over Diaz's absences for medical reasons and related issues with substitute teachers. Diaz Aff. ¶¶ 36-58. The parties dispute the actual facts of these incidents, but the clashes led to several meetings with school officials and the placement of two letters of concern in Diaz's employment file. *See* Certification of Miriam Lezanski ¶¶ 2-6; Diaz Aff. ¶ 46, 56; MD SoF ¶ 14 & Exs. N, O.

On April 19, 2007, Diaz met with Pascale regarding a letter from Von Euler that claimed that Diaz had expressed her intent to get Lezanski fired. Diaz Aff. ¶ 60. On April 23, 2007, Diaz took medical leave for what her doctor described as acute fatigue syndrome. TAC ¶ 19; Diaz Aff. ¶ 59. On May 31, 2007, while Diaz was still out on leave, Montesano called her to attend a meeting regarding the Von Euler letter. TAC ¶ 19; Diaz Aff. ¶ 62. At that meeting, Diaz claims Montesano informed her that her increment for the next school year would be withheld in part because of the letter. TAC ¶ 19. On June 11, 2007, Diaz had a conference call with Pascale, Lezanski, and Schal to discuss Diaz's year-end evaluation. TAC ¶ 20; MD SoF ¶ 14 & Exs. P-T. During this call, Diaz claims Pascale informed her that she would be placed on a performance improvement plan for the first ninety days of the upcoming school year and confirmed Montesano's decision to withhold her increment. TAC ¶ 20; Diaz Aff. ¶ 63. Diaz claims the basis for the decision was the Von Euler letter, but the Mahwah Defendants point to numerous infractions they claim Diaz committed as justification for the withholding. TAC ¶ 20; MD SoF ¶ 14, 15 & Exs. P-T.

### C. Diaz's Challenge to the Withholding of Her Increment

After properly notifying Diaz of its intent to do so, the Board discussed the withholding at a public meeting held on June 27, 2007 and affirmed Montesano's decision. MD SoF ¶¶ 16, 17 & Exs. Y, Z. On July 13, 2007, the MEA filed a grievance concerning Montesano's decision to withhold Diaz's increment. Union SoF ¶ 5; MD SoF ¶ 18 & Ex. AA. Diaz retained George J. Cotz as private counsel to represent her during the grievance. TAC ¶ 25. On August 29, 2007, the Board held a closed meeting and provided Diaz an opportunity to be heard on her grievance. MD SoF ¶ 19 & Ex. BB. At that meeting, Diaz was not represented by Cotz but was represented by two union officials: Schal and Tondi. MD SoF ¶ 19 & Ex. BB. The Board had no input into Diaz's

selection of representation. MD SoF ¶ 19 & Ex. BB. The Board denied the grievance on September 17, 2007. Union SoF ¶ 5; MD SoF ¶ 20 & Ex. CC.

In November 2007, Diaz filed a complaint with the New Jersey Public Employment Relations Commission arguing that the Board denied her the ability to have her own attorney represent her at the proceeding; the complaint was dismissed. Union SoF ¶ 3 & Ex. B. In February 2008, Diaz sought similar relief from the New Jersey Department of Education, which also dismissed. TAC ¶ 28; Union SoF ¶ 3 & Ex. D.

The MEA filed a grievance concerning the School District's Vote to withhold Diaz's increment for the 2007-2008 school year, which the Board denied. Union SoF ¶ 4. Thereafter, Tondi pursued the matter further on Diaz's behalf, filing a demand for arbitration challenging the Board's decision to withhold the increment and working with an NJEA appointed-attorney to file a petition with the Commissioner of Education. Union SoF ¶ 6. The demand for arbitration was unsuccessful, and Diaz eventually withdrew the petition that had been filed with the Commissioner. *Id.* & Ex. I.

### D. Allegations of Discrimination by Lezanski

During the beginning of the 2007-2008 School Year, Diaz again clashed with Lezanski over several school-related issues. Diaz Aff. ¶ 64-73. Again, the parties dispute the actual facts of these incidents, but the clashes led to several meetings between Diaz and school officials. Diaz Aff. ¶ 64-73; Certification of Miriam Lezanski, ¶¶ 2-6; MD SoF ¶ 14 & Exs. U-W. From September through December 19, 2007, Diaz met monthly with Lezanski regarding the performance improvement plan; the meetings were largely positive and Diaz claims that she met her required goals. Diaz Aff. ¶¶ 74-79.

On April 10, 2008, Diaz claims Lezanski asked her to show Lezanski emails regarding school business before she sent them. Diaz Aff. ¶ 95. Upon reviewing one email to a parent, Diaz claims Lezanski said to her: "You can't write emails because of your culture and we Americans like things sugar coated." TAC ¶ 30; Diaz Aff. ¶ 95. On May 8, 2008, during one of their monthly meetings, Diaz claims that Lezanski said to her: "I believe your problems with the District and with your colleagues are due to your culture." TAC ¶ 31; Diaz Aff. ¶ 96. Although the exact facts of the investigation are in dispute, at or around this time, Diaz spoke with Pascale regarding Lezanski's comments and then filed a report with the Board's Affirmative Action Officer, Janet Donohue. Diaz Aff. ¶ 97-99; MD SoF ¶ 27 & Ex. FF. Donohue ultimately concluded that the incidents were the result of a misunderstanding and that there was "no validity to Ms. Diaz's claim that Ms. Lezanski had created a hostile work environment." Diaz Aff. ¶ 99; MD SoF ¶ 28 & Ex. FF.

On June 5, 2008, Diaz attended a meeting with Lezanski and Pascale regarding her annual performance evaluation. Diaz Aff. ¶ 103-104. Diaz claims she is the only teacher in her department who was required to attend an actual meeting to discuss her annual performance evaluation. Diaz Aff. ¶ 103. Diaz further claims at the meeting that neither she nor Tondi were allowed to have input regarding her performance plan, which was extended. Diaz Aff. ¶ 104. On June 22, 2008, Diaz filed a charge of discrimination with the EEOC. Diaz Aff. ¶ 105 & Ex. D. On July 2, 2008, Diaz attended another meeting

with Lezanski and Pascale to discuss her performance improvement plan, this time with Schal representing her. Diaz Aff. ¶ 107-08. During this meeting, Diaz claims Schal neither spoke in her defense nor took notes. Diaz Aff. ¶ 107-08.

### E. Diaz's Request to be Transferred and Ensuing Events

On or about July 24, 2008, Diaz requested to be transferred from the High School to the Middle School as a matter of medical necessity. MD SoF ¶¶ 2, 3; Diaz Aff. ¶ 109. In support thereof, Diaz submitted a letter from her physician, Dr. Paul A. Ostergaard, stating that her position at the High School was causing her "extreme duress" and that Diaz has to take medication for "gastritis" and also suffers from "irritable bowel syndrome and insomnia"; she did not mention her recurrent cancer. *Id*.; MD SoF ¶ 3 & Ex. C. On August 9, 2008, Montesano informed Diaz that he wanted her to visit the District's physician, Dr. Everett Schlam, in order for Dr. Schlam to assess the medical necessity of her requested transfer; Diaz complied. MD SoF ¶ 3 & Ex. D. Dr. Schlam reported to Montesano that Diaz had a "chronic stress disorder which is interfering with her ability to work" and he further recommended that Diaz undergo a psychiatric evaluation "to help her manage acute stress so she can function effectively." *Id.* Dr. Schlam also requested that Diaz received pyschiatric clearance prior to starting the 2008-2009 School Year. *Id.* The Board and Montesano placed Diaz on leave on September 2, 2008. TAC ¶ 39. With the assistance of her counsel, Diaz selected Dr. David J. Gallina to perform the psychiatric evaluation. MD SoF ¶ 4 & Ex. E. Diaz saw Dr. Gallina in person on September 24, 2008. MD SoF ¶ 5 & Ex. G. In his report, dated September 27, 2008, Dr. Gallina opined that "Ms. Diaz is unfit to assume her job related duties as a teacher." MD SoF ¶ 5 & Ex. G. Montesano informed Diaz of Dr. Gallina's findings and that she would need written clearance from Dr. Gallina before she would be able to return to work. MD SoF ¶ 6 & Ex. H. Montesano placed Diaz on sick leave starting October 13, 2008. MD Sof ¶ 6 & Ex. H.

The MEA filed a grievance on Diaz's behalf challenging the decision to place her on leave and the deduction of her sick days. Union SoF ¶ 7 & Ex. J. On December 2, 2008, Diaz made an application for emergent relief to the New Jersey Department of Education to have her pay and medical benefits reinstated. MD SoF ¶ 7; Union SoF ¶ 9. Maurice also filed a petition of appeal before the New Jersey Commissioner of Education to, *inter alia*, have Daiz returned to active employment. Union SoF ¶ 8 & Ex. O. The New Jersey Office of Administration Law (the "OAL") denied the application for emergent relief; the New Jersey Commissioner of Education affirmed and returned the case to the OAL for a hearing regarding Montesano and the Board's decision to send Diaz for medical examinations. MD SoF ¶ 7 & Exs. F, I. On March 3, 2010, an Administrative Law Judge ruled that the Board and Montesano had acted properly and appropriately.  MD SoF ¶ 8-9 & Ex. F. The ALJ further ruled that Diaz must be afforded the opportunity to return to her teaching duties by demonstrating fitness. MD SoF ¶ 10 & Ex. F. The Commissioner of Education adopted the ALJ's decision on August 27, 2010. MD SoF ¶ 11 & Ex. J.

In June and September of 2010, Diaz met with and was evaluated by Dr. Paul S.

5

Appelbaum who held that although Diaz has "a set of personality traits . . . that play a causal role in the conflict that developed," she no longer had any neuorphsychiatric illness that would render her unfit to resume her teaching duties. MD SoF ¶¶ 12, 13 & Ex. K. Rather than return to Mahwah, Diaz took employment as a teacher in New York. Union SoF ¶ 11.

### II.  Legal Analysis

#### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

To prevail, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. If the moving party meets its initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.2d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

#### B. Preclusion

The Mahwah Defendants argue that the earlier administrative proceedings by the OAL and the Commissioner of Education preclude Diaz from relitigating certain issues involved in Counts 1 and 2. But proceedings before administrative agencies that have not been reviewed by a state court do not have a preclusive effect on later proceedings in a federal court involving state or federal discrimination law. *See, e.g.*, *U.S. Board of Educ. v. Tp. Of Piscataway*, 798 F. Supp. 1093, 1099-1101 (D.N.J. 1992) (citing *University of Tennessee v. Elliot*, 478 U.S. 788 (1986)) (holding Commissioner of Education's determination did not preclude claims brought under Title VII and NJLAD).[2]

#### C. Counts 1, 3, 5, and 7 - Title VII and ADA Claims

---

[2] The Mahwah Defendant rely on pre-*Elliot* authority that no longer controls on this issue; in fact, one case the Mahwah Defendants cite, *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 590 F. Supp. 1146 (N.D. Ill. 1984) *aff'd* 768 F.2d 842 (7th Cir. 1985), was reversed by the United States Supreme Court. *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 478 U.S. 1017 (1986) (vacating court of appeals order and remanding in light of *Elliot*).

Counts 1 and 7 derive from Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). Counts 3 and 5 derive from the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.* Both Title VII and the ADA require a complainant to exhaust their administrative remedies prior to bringing suit. *Phillips v. Sheraton Society Hill*, 163 F. App'x 93, 94-95 (3d Cir. 2005); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

Diaz has failed to exhaust her administrative remedies because she has failed to obtain a right-to-sue letter. While Diaz did file a charge with the EEOC relating to some of the incidents at issue here, the Defendants have introduced a letter from the New Jersey Office of the Attorney General, Department of Law and Public Safety, Division of Civil Rights suggesting that Diaz voluntarily withdrew her complaint before receiving a right-to-sue letter. *See* First Cabalar Cert., ¶ 36 & Ex. II. Diaz has not produced a right-to-sue letter, and she does not respond to the Defendants' argument. The Complaint does allege having received a right-to-sue letter from the EEOC, but in light of the evidence before the Court, Diaz's bare allegation does not stand to create a genuine issue of material fact.

Because she has not exhausted her administrative remedies with regards to any of the claims brought in Counts 1, 3, 5, and 7, this Court will grant summary judgment for the Defendants on those Counts and dismiss them without prejudice. *See, e.g.*, *Schwinge v. Deptford Tp. Bd. Of Educ.*, 2011 WL 689615, at *5 (D.N.J. Feb. 17, 2011) (dismissing claims brought under ADA where plaintiff voluntarily withdrew EEOC complaint prior to obtaining right-to-sue letter); *Hernandez v. Potter*, 552 F. Supp. 2d 209, 210 (D.P.R. 2007) (granting summary judgment for defendant where plaintiff withdrew EEOC complaint without obtaining right-to-sue letter.).

### D. Count 2 – Retaliation – N.J.S.A. 10:5-12(d)

Diaz brings a cause of action against Montesano for retaliation, alleging that Montesano retaliated against her for her EEOC charge and her request for counsel at the August 29, 2007 hearing, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(d).

To establish a *prima facie* case of retaliation under NJLAD, a plaintiff must show that: (1) she was in a protected class; (2) she engaged in protected activity known to the employer; (3) she was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence. *Victor v. State*, 4 A.3d 126, 141 (N.J. 2010). Once the plaintiff has established a *prima facie* case, the burden of going forward, but not the burden of persuasion, shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action. *Jamison v. Rockaway Tp. Bd. of Educ.*, 577 A.2d 177, 182 (N.J. Super. A.D. 1990). If the employer articulates such a reason, the claimant-employee is afforded a fair opportunity to show by a preponderance of the evidence that a discriminatory intent motivated the employer's action. *Id.*

Diaz satisfies the first three prongs of establishing a *prima facie* case with ease. First, there is no dispute that Diaz is Hispanic and therefore a member of a protected

7

class. *See, e.g., Martinez v. National Broadcasting Corp.*, 877 F. Supp. 219, 229 (D.N.J. 1994). Second, while Diaz's fails to explain how her attempt to enforce her alleged contractual right to counsel is a statutorily protected activity, her filing of a complaint with the EEOC is obviously such an activity. *See Woods-Pirozzi v. Nabisco Foods*, 675 A.2d 684, 695 (N.J. Super. A.D. 1996). Third, Diaz suffered an adverse employment action. Merely requiring an employee to submit to a medical or psychiatric examination is not an adverse employment action. *See, e.g.*, *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005). But Montesano's decision to place Diaz on leave against her wishes was an adverse employment action because it adversely affected the terms, compensations, and conditions of her employment as a teacher. *See Marrero v. Camden County Bd. of Social Services*, 164 F. Supp. 2d 455, 473 (D.N.J. 2001).

And although it is a close call, Diaz is able to show a causal link between the filing of the EEOC complaint and Montesano placing her on leave. While Diaz points to no evidence of a causal connection, she argues that a jury could infer a connection from the timing of events. A temporal proximity between the protected activity and the termination can be sufficient to establish a causal link if the timing of the alleged retaliatory action is unusually suggestive of retaliatory motive. *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004). Here, reading the evidence in the light most favorable to Diaz, Montesano placed Diaz on leave approximately three weeks after learning of the EEOC complaint. And he sent Diaz for a medical examination approximately five days after learning of the EEOC complaint. A reasonable juror could infer a causal connection based upon this unusually suggestive temporal proximity.

The burden shifts to Montesano to articulate a legitimate non-retaliatory reason for the adverse action, and Montesano succeeds. Montesano's decision to send Diaz for a medical examination came in response to her request for a transfer for medical reasons. First Cabalar Cert. ¶¶ 5, 6 & Exs. D, E. He based his decision to send Diaz for a psychiatric examination on the recommendation of Dr. Schlam. *Id.* And Montesano's decision that Diaz could not return to her teaching position was based on the report from a psychiatrist chosen by Diaz and her counsel who found that Diaz was "unfit to assume her job related duties as a teacher." First Cabalar Cert. ¶¶ 8, 9 & Exs. G, H.

The burden thus shifts back to Diaz, and in order to defeat the motion for summary judgment, Diaz must either: (1) discredit the proffered reasons, either circumstantially or directly, or (2) adduce evidence, whether circumstantial or direct, that retaliation was more likely than not a motivating or determinative cause of the adverse employment action. *Palmer v. Shore Culinary LLC*, 2011 WL 1466134, at *9 (N.J. Super. A.D. April 18, 2011) (*citing Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

While Montesano's decision to send Diaz for a medical examination occurred about five days after he received notice of the EEOC complaint, it had also been only eleven days since he had received her request for a transfer, so the timing, though sufficient to establish a *prima facie* case, is insufficient evidence from which a juror could determine that retaliation more likely than not motivated Montesano's decision. Aside from the timing, the only evidence Diaz points to regarding Montesano's motivation is the following testimony from Montesano's deposition:

8

> Q. Prior to Ms. Diaz's situation in the summer of 2008, while you've been superintendent had any other teachers asked for an accommodation based on a medical condition or disability?
> . . .
> A. I believe so.
> Q. Do you remember how many?
> A. No, I don't. I would say --
> Q. More than one?
> A. Yes.
> Q. More than ten?
> A. No. Less than five I believe that I can recall.
> Q. So a half a dozen or less?
> A. Or less.
> Q. Have you sent all of them to Dr. Schlam for an evaluation?
> A. No.
> Q. Had you sent any of those others to Dr. Schlam for an evaluation?
> A. This was the only request for a transfer for medical reasons.
> Q. So the answer to my question --
> A. The answer is no.

Diaz SOF, Ex. M. The excerpt from Montesano's deposition does not appear to be the kind of evidence showing such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Montesano's proffered reasons that a rational juror could find them "unworthy of credence." *Palmer*, 2011 WL at *9 (quotation omitted). Nor is the combined evidence enough that a reasonable juror could find by a preponderance of the evidence that Montesano's motivation for these actions was retaliation. The Court will grant summary judgment for Defendants on Count 2.

### E. Count 4 – Retaliation by Failure to Accommodate – N.J.S.A. 10:5-12(d)

Diaz's also argues that unspecified "Defendants" retaliated against her by continuously failing to accommodate her reasonable requests, in violation of N.J.S.A. 10:5-12(d). Diaz does not specify what specifics acts constitute the failure to accommodate, but she does argue that the failure to accommodate was ongoing from the Fall of 2006. Assuming this is true, Diaz does not explain how the Defendants could possibly start retaliating against her before she took the statutorily protected act of filing an EEOC complaint in June of 2008. The only request for accommodation that Diaz made after filing her EEOC complaint was her request to be transferred to the Middle School. Assuming again for the sake of argument that failure to accommodate can constitute an adverse employment action for the purposes of establishing a *prima facie* case of retaliation, any claim for *retaliation* based on a failure to grant the requested transfer fails for the reasons stated above regarding Count 2. The Court will grant summary judgment on Count 4 for the Defendants.

### F. Count 6 – Failure to Accommodate – N.J.S.A. 10:5-12(d)

Under NJLAD, employers have a duty to attempt to accommodate the physical disabilities of their employees. *See Raspa v. Office of Sherriff of County of Gloucester*, 924 A.2d 435, 444 (N.J. 2007). Diaz claims that the Board and Montesano breached this

9

duty. Although she alleges a continuing failure to accommodate that started at the beginning of the 2006-2007 School Year and continued throughout the remainder of her employment, the evidence shows – and the Complaint pleads – only two discrete instances of failure to accommodate she could raise against Montesano and the Board. The first occurred in September of 2006, when she claims her requests for an elevator key and to have a single work station for the upcoming school year were denied. But any claim for this first alleged failure to accommodate is time-barred by the applicable two-year statute of limitations. *Montells v. Haynes*, 627 A.2d 654, 658-660 (N.J. 1993) (holding all claims under NJLAD subject to two-year limitations period). She should have known of any constructive or actual failure by September 2006, but she did not file her action until January 1, 2009, well after the two-year period had run. *See Durham v. Atlantic City Elec. Co.*, 2010 WL 3906673, at *9 (D.N.J. Sep. 28, 2010) (claim for failure to accommodate accrues when plaintiff learns of denial of request). Thus, the Court will grant summary judgment for the Defendants as to any claim regarding this first failure.

The second alleged failure occurred in the Fall of 2008, when her request to be transferred to the Middle School resulted in her being sent for medical examinations and ultimately being placed on leave. This is well within the two-year limitations period, and so it is not time-barred. The Defendants do not present any argument regarding this second failure to accommodate. Thus, the Court will grant summary judgment in part for the Defendants on Count 6 and otherwise deny it, by dismissing any claim made by Diaz relating to the first failure to accommodate but otherwise not dismissing the claim as it relates to the second failure to accommodate.

### G. Count 8 – Ethnic Discrimination – N.J.S.A. 10:5-12

Diaz brings a claim against Lezanski for ethnic discrimination in violation of NJLAD. Because Diaz has produced direct evidence of discrimination, this Court will deny the motion for summary judgment. Although Diaz alleges at least two instances where Lezanski has made a comment regarding Diaz's culture, one of those comments was not sufficiently connected to an adverse employment action such that it could constitute direct evidence of discrimination. *See McDevitt v. Bill Good Builders, Inc.*, 816 A.2d 164, 168 (N.J. 2003). The key piece of evidence is the following statement allegedly made by Lezanski during the May 8, 2008 meeting with Diaz: "I believe that any problems you have with your colleagues and with the district are due to your culture." Diaz SoF ¶ 53; Diaz Aff. ¶ 96. Because Lezanski allegedly made this statement during around the time she was involved in taking alleged adverse employment actions against Diaz, this statement is direct evidence of discrimination

### H. Counts 9 and 10 – Denial of Counsel

Diaz brings claims against unspecified "Defendants" under 42 U.S.C. § 1983 arguing that these Defendants deprived her of her right to counsel at a grievance hearing before the Board on August 29, 2007. Diaz brings a nearly identical claim under N.J.S.A. 10:6-1 *et seq*, the New Jersey Civil Rights Act (the "NJCRA"). The applicable collective bargaining agreement gives union members the right to "have representation of his/her

own choosing" at certain grievance hearings including, Diaz argues, the August 29, 2007 hearing. TAC ¶ 24; First Cabalar Cert. ¶ 35 & Ex. HH. But at that hearing, Diaz only had union-provided representatives who were not lawyers, and she was unable to have her own private counsel. She argues this was in violation of her substantive and procedural due process rights.

In order to state a claim for relief under Section 1983, a plaintiff must show that a federally secured right was implicated. *See Sample v. Diecks*, 885 F.2d 1099, 1107 (3d Cir. 1989); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). Diaz fails to point to any Constitutional or federal statutory source for her purported right to counsel of her own choosing at such grievance hearings. As federal courts have recognized, parties do not generally have a Constitutional right to counsel at such grievance hearings. *See, e.g.*, *Fenje v. Feld*, 301 F. Supp. 2d 871, 803 (N.D. Ill. 2003). Diaz's claim under Section 1983 therefore fail.

This Court construes claims under the NJCRA in terms nearly identical to Section 1983, its federal counterpart. *Stroby v. Egg Harbor Tp.*, --- F. Supp. 2d ----, 2010 WL 5036982, at *4 n.5 (D.N.J. Dec. 10, 2010). Because her claim under Section 1983 failed, Diaz's claim under NJCRA must also fail unless Diaz can point to some basis for purported rights deriving from New Jersey Constitutional or statutory law. *See* N.J.S.A. 10:6-2; *Green v. Corzine*, 2011 WL 735719, at *7 (D.N.J. Feb. 22, 2011). But because Diaz points to nothing, her claim under the NJCRA must also fail.

The Court will grant summary judgment for the Defendants on Counts 9 and 10.

### I. Counts 11 and 12 – Termination Without Hearing

Diaz also bring a claim under Section 1983 and the NJCRA alleging that her procedural and substantive due process rights were violated when she was effectively terminated from employment without a hearing when she was involuntarily placed on medical leave on or around September of 2008.

First, even if the Court determined or assumed that Diaz had been constructively terminated, she cannot state a cause of action for violation of substantive due process under the Constitution because state-created tenured public employment is not a fundamental property interest entitled to substantive due process protection. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 142 (3d Cir. 2000).

Second, Diaz has not presented any evidence that the state procedures available to her with regard to the alleged termination did not satisfy the requirements of procedural due process. *See DeBlasio v. Zoning Bd.*, 53 F.3d 592, 597 (3d Cir.1995), *overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir.2003). The undisputed evidence makes clear that Diaz was able to – and did – challenge the Defendants' actions first in a grievance procedure, then with the Public Employment Relations Commission, and then directly with the Commissioner of Education. Union SoF ¶¶ 7-10 & Exs. J-R. Diaz does not present any evidence of any defect in these hearings. Her claims under Section 1983 fail.

And as with her claim under Count 10, Diaz does not explain how her claims could succeed under NJCRA if they fail under Section 1983. Thus, her claim under

11

NJCRA must also fail. The Court will grant summary judgment for the Defendants on Counts 11 and 12.

### J.  Count 13 – Tortious Interference Against Von Euler[3]

Von Euler has not answered nor has she appeared in this action. It does not appear that Diaz has served Von Euler, and Diaz has not made any argument regarding this failure. In light of this and how far the case has proceeded, the Court will *sua sponte* dismiss Count 13 without prejudice for insufficient service of process under Federal Rules of Civil Procedure 4 and 12(b)(5). *Pittman v. La Fontaine*, 756 F. Supp. 834, 847 (D.N.J. 1991); *Mote v. Murtin*, 2008 WL 2761896, at *6 (M.D. Pa. July 11, 2008).

### K.  Counts 14 and 15 – Failure to Represent Against the Union Defendants

Diaz alleges that Schal and the MEA neglected their duties to represent her by voting to support the Board over Diaz. The Union Defendants interpret this claim as a breach of the duty of fair representation imposed by federal labor law. They further argue that any such claim is barred by the applicable statute of limitations.

Diaz does not respond to this argument. Diaz does not state the basis for her claim, but based on the allegations of the Third Amended Complaint, this Court understands Diaz's claim against the MEA as a breach of the duty of fair representation that a union owes its member under federal labor law. *See, e.g., Hrabinski v. Exxon Chemical Co.*, 609 A.2d 120, 122 (N.J. Super. 1992). The alleged vote occurred around June 2007 and Diaz learned of it in the summer of 2008 when Tondi confirmed a rumor that she had heard. *See* TAC ¶ 45 & Union Br. Summ. J. & Ex. A. But Diaz did not bring a claim against MEA until December 24, 2009, when she amended her complaint to add MEA as a defendant. Her claim is thus barred by the six-month statute of limitations applicable to causes of action for breach of the duty of fair representation. *Hrabinski*, 609 A.2d at 122 (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983)).[4]

The Court will grant summary judgment for Defendants on Counts 14 and 15.[5]

## III.  Supplemental Jurisdiction

Now that all of Diaz's federal causes of action have been dismissed, the Court must act *sua sponte* and decide whether to exercise supplemental subject-matter jurisdiction over the pendent state law claims. *Hedges v. Musco*, 204 F.3d 109, 123 (3d

---

[3] Diaz previously moved to name Von Euler as the Jane Doe Defendant but later withdrew that motion. Diaz appears to have disregarded her prior withdrawal and gone ahead and substituted Von Euler *de facto*.

[4] Even if these claims were not time-barred, Diaz has failed to present any evidence showing or make any argument explaining how the Union Defendants breached their duties to represent her without hostility and in good faith. The record makes clear that Diaz had strong Union representation throughout numerous grievance and administrative proceedings even after the supposed vote took place.

[5] The Complaint titles Count 14 "Tortuous [sic] interference against kathy scholl [sic]." But the substantive allegations of the Complaint make clear that the claim is about breach of the duty of fair representation. In any event, the Complaint fails to state a cause of action for interference because it fails to allege that Schal took the vote without justification and that there was a reasonable probability that Schal's participation in the vote actually affected the outcome of the Board's decision-making process. *See Singer v. Beach Trading Co., Inc.*, 876 A.2d 885, 895 (N.J. Super. A.D. 2005) (stating elements of cause of action for tortious interference under New Jersey law).

Cir. 2000). This lawsuit was filed in January 2009 – over two years ago. Discovery is complete. And while Diaz would have an opportunity to refile her claims in state court if this Court declined to exercise supplemental jurisdiction, this would be inconvenient for the parties and would likely cause substantial delay, depending upon the caseload of the state court. In light of these facts, and that the fact that this Court is more than able to competently apply New Jersey law, the Court will exercise supplemental jurisdiction over the remaining claims.

### IV. Conclusion

For the reasons stated above, the Court grants summary judgment for Defendants on Counts 1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 14, and 15. The Court denies summary judgment on Counts 6 and 8. An appropriate order follows.


          /s/ William J. Martini  
     **WILLIAM J. MARTINI, U.S.D.J.**